UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARQUIS EZEKIEL HEARD,

      Plaintiff,

v.                                   Case No.  2:25-cv-580-SPC-KRH

M. PIERRE-LOUIS, et al.,

      Defendants.

_____

## **OPINION AND ORDER**

Before the Court is Defendant Mackender Pierre-Louis's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  (Doc. 20).  Plaintiff Marquis Ezekiel Heard, *pro se*, files a response in opposition. (Doc. 22).  In his Complaint (Doc. 1), Heard has also named a second, fictitiously identified defendant, "John Doe."  He has not been served, but the arguments raised by Pierre-Louis also might apply to the claims against Doe.  The Court has a duty under 28 U.S.C. §§ 1915(e)(2) and 1915A to dismiss any portion of the complaint that fails to state a claim upon which relief may be granted. Accordingly, the Court has *sua sponte* reviewed the claims against Doe in light of the arguments raised in the motion.  For the reasons that follow, Pierre-Louis's motion to dismiss will be granted in part and denied in part, and the claims against Doe will also be dismissed in part.

## Background

Heard is a prisoner of the Florida Department of Corrections. He is now confined at the Dade Correctional Institution in Florida City, Florida. (*See* Doc. 21). His claims arose on May 26, 2023, when he was held at the Charlotte Correctional Facility in Punta Gorda, Florida. He sues two corrections officers, Pierre-Louis and Doe (collectively "Defendants"), alleging they used excessive force on him in violation of the Eighth Amendment. The Court recounts the factual background as pled in the Complaint[1], which the Court must take as true to decide whether it states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

On the day in question, Defendant Doe pulled Heard out of his cell "for Mental Health Group Call-out." (Doc. 1 at 14, ¶ 1). After placing Heard in full body restraints, Doe "got mad at [Heard] because he did not want to refuse Group Call-out" and "slammed [him] face first" to the ground. (*Id.* at 14, ¶ 3). Doe got on top of Heard "put knees into [his] lower and upper body and head" (*id.* at 12, ¶ 4) and "kneed and kicked" Heard's legs. (*Id.* at 12, ¶ 3). Defendant Pierre-Louis then arrived. (Doc. 1 at 13, ¶ 8). With Heard still on the ground in restraints and engaged with Doe, Pierre-Louis "jumped on top of [Heard]"

---

[1] On August 6, 2025, the Court granted a motion by Heard's for leave to file an amended complaint. (*See* Docs. 11, 12). However, he did not attach a proposed amendment to his motion for leave, nor has he filed an amended complaint since. Therefore, the original complaint, Doc. 1, remains the operative pleading.

and put his knees into "the back of [Heard's] neck, stopping [him] from breathing." (Doc. 1 at 13, ¶¶ 9, 10). Pierre-Louis also kneed, kicked, and hit Heard in the legs, hands, and wrists. (Doc. 1 at 13, ¶¶ 11–13). Heard insists he was "not being disorderly" at any time during the incident. (*Id.* at 12, ¶ 3; *id.* at 15, ¶ 6).

Heard was taken to the prison medical area where a nurse gave him ibuprofen. (Doc. 1 at 16, ¶¶ 13, 14). As a result of the altercation, Heard had swelling and bruises on his hands, wrists, legs, and neck lasting from between three and seven days. (*See id.* at 12–14, ¶¶ 4, 5, 10, 11, 12, 13). He also endured "pain and suffering" and "emotional distress." (*Id.* at 16, ¶ 12).

Heard sues Defendants under 42 U.S.C. § 1983 in both their individual and official capacities. He demands compensatory and punitive damages, as well as declaratory relief. Defendant Pierre-Louis moves to dismiss under Fed. R. Civ. P. 12(b)(6). (Doc. 20; *see also* Docs. 28, 29). Heard has filed a memorandum in opposition. (Doc. 22).

## Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court must limit its consideration to (1) the face of the complaint, (2) documents attached to the complaint or otherwise central to the plaintiff's claim and whose authenticity is not contested, and (3) materials subject to judicial notice. *See United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). The court

must accept all well-pleaded factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

A federal district court is required to review a civil complaint filed in *forma pauperis* and to dismiss any such complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also* 28 U.S.C. § 1915A. The mandatory language of 28 U.S.C. § 1915 applies to all proceedings *in forma pauperis*. A complaint may be dismissed as frivolous under § 1915(e)(2)(B)(i) where it lacks an arguable basis in law or

4

fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a right that clearly does not exist. *Id.* at 327. The phrase "fails to state a claim upon which relief may be granted" in § 1915(e)(2)(B)(ii) has the same meaning as the nearly identical phrase in Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Accordingly, review under the former provision applies the same standards as a motion to dismiss under the latter. *Id.*

Heard files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

Heard is representing himself. Courts hold the pleadings of *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But courts do not have a duty to "re-write" a pro se litigant's complaint to find a claim.

5

*See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 327 (11th Cir. 2007).

### Discussion

The Eighth Amendment forbids, among other things, "cruel and usual punishments." That provision applies to the States under the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666–67 (1962). Under the Eighth Amendment, prison guards may apply reasonable force "in a good-faith effort to maintain or restore discipline" but not "maliciously and sadistically to cause harm." *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

### A.   *Heck v. Humphrey*

Pierre-Louis first argues Heard's claim against him is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that a plaintiff may not recover damages under § 1983 if a judgment in his favor would "necessarily imply the invalidity" of a conviction or sentence, unless that conviction or sentence has been invalidated. 512 U.S. at 487. The Supreme Court extended the rule to lawsuits that would imply the invalidity of prison disciplinary proceedings affecting the fact or duration of the plaintiff's underlying criminal sentence. *See Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997). However, *Heck* does not bar a § 1983 claim that would imply the invalidity of a prison disciplinary

proceeding that does not affect the plaintiff's sentence. *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004).

The Eleventh Circuit has further explained:

> "*Heck* bars a § 1983 claim only when it is a 'logical necessity' that judgment for the plaintiff in that suit would contradict the existing punishment." *Dixon* [*v. Hodges*, 887 F.3d 1235, 1239 (11th Cir. 2018)] (quoting *Dyer v. Lee*, 488 F.3d 876, 879 (11th Cir. 2007))). Factual allegations bar claims under *Heck* in only narrow circumstances: "where the allegation in the § 1983 claim is a specific one that both necessarily implies the earlier decision is invalid and is necessary to the success of the § 1983 suit itself." *Hall*, 67 F.4th at 1292 (quoting *Dixon*, 887 F.3d at 1239). "When a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his § 1983 suit, the *Heck* bar does not apply." *Id.*

*Hall v. Merola*, 67 F.4th 1282, 1291–92 (11th Cir. 2023).

Heard emphasizes he was "not being disorderly" at any time. However, Pierre-Louis maintains Heard received a disciplinary report (DR) arising from the incident, resulting in prison authorities finding him guilty of "disobeying a verbal order" in violation of prison rules. (Doc. 20 at 4). In support, Pierre-Louis submits associated DR records from the prison. (Doc. 29-1). In them "Officer W. Romero, who appears to be the Doe defendant, reports he was placing Heard "in a rip-restraint[2] for mental health group" when Heard

---

[2] This appears to be an intended reference to a "RIPP" restraint, a brand name of restraint equipment used by law enforcement and corrections personnel. *See* https://www. rippinternational.com (last visited July 1, 2026); *see also, e.g., Gonzalez v. City of Phoenix*, 163 F.4th 1289, 1294 (9th Cir. 2026); *Gruenberg v. Gempeler*, 697 F.3d 573, 576 (7th Cir. 2012).

"attempted to pull away from [him]." (Doc. 29-1 at 5 (footnote added)).  Romero alleged he gave Heard "a direct verbal order to cease his actions," but Heard refused, "result[ing] in a reactionary physical use of force." (*Id.*)  For his part, Heard denied pulling away as Romero put him in restraints. (*Id.* at 8). However, Heard admitted he refused an order by Romero to go back into his cell because he "wanted to go to group." (*Id.*; *see also id.* at 9, 11).  A prison investigator reviewed a surveillance recording of the incident, which is not in the record. (*Id.* at 11). He reported seeing Romero place restraints on Heard, a struggle ensuing in front of the cell, and Romero taking Heard to the ground. (*Id.* at 11).  However, the investigator could not hear what was being said. (Doc. 29-1 at 11).   Prison authorities ultimately found Heard guilty of disobeying Romero's order to stop "pulling way." (*Id.* at 1).  The decision further recognized the surveillance recording "did not provide evidence to support" Plaintiff's claim he had not "pulled away from" Romero. (*Id.* at 1).

Pierre-Louis contends Plaintiff's disobedience, as established by the DR records, justified the force applied.  Pierre-Louis argues the § 1983 damages claim is barred by *Heck* and *Balisok* because Heard "seeks to invalidate the findings of his disciplinary convictions." (Doc. 20 at 4). This argument would also apply to the claim against Doe.

Heard does not challenge the authenticity of the DR records.  Nor does he contest Pierre-Louis's invitation for the Court to consider them.  The Court

therefore takes judicial notice of the DR records as documents created by a government agency. *See* Fed. R. Evid. 201; *Robinson v. Larson*, 2016 WL 2620477, at \*5 n.4 (N.D. Fla. Apr. 4, 2016). In doing so, the Court might consider the records to examine the disciplinary charge, what matters were litigated, and the disposition by prison authorities, but not for the truth of the matters asserted in the records. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Nevertheless, Heard insists the DR does not bar his claim under *Heck*. The Court agrees.

First, *Heck* does not apply "categorically to all suits challenging prison disciplinary proceedings." *Muhammad*, 540 U.S. at 754. Even if a § 1983 claim would imply the invalidity of a prison disciplinary sanction, *Heck* cannot preclude the claim unless the prison discipline "affect[s] the duration of time to be served" on the underlying criminal conviction, as "by bearing on the award or revocation of good time credits," id., known in Florida as "gain time." *See* Fla. Stat. § 944.275. The DR records show that Heard received 30 days of disciplinary confinement for the infraction. (Doc. 29-1 at 1). However, neither Pierre-Louis nor Heard alleges or acknowledges Heard lost gain time. Nor is such a loss clear from the DR decision. Therefore, Pierre-Louis fails to demonstrate *Heck* applies. But even if the DR did affect the duration of Heard's sentence, the Court would still conclude *Heck* does not apply, as explained below.

9

Even if the DR findings establish that Heard refused Romero's order and "pulled away" from him, those circumstances would not necessarily preclude a finding that one or both Defendants used unconstitutionally excessive force. That is, Heard might not have immediately yielded to Romero's order to stop resisting, *and* the Defendants might have maliciously applied excessive force beyond that required to secure compliance and restore discipline. *See Hall*, 67 F.3d at 1292 (prison disciplinary action for tampering with sprinkler system did not bar excessive force claim under *Heck*; defendant guards could be found to have used more force than constitutionally permissible in stopping the plaintiff from tampering with the system even if his claim that he did not tamper was false); *Sconiers v. Lockhart*, 946 F.3d 1256, 1268–70 (11th Cir. 2020) (inmate's guilty plea to resisting or obstructing corrections officer without violence did not bar excessive force claim against officer under *Heck*); *Dixon*, 887 F.3d at 1239–40 (although disciplinary action established the prisoner lunged at defendant guard, it was "logically possible both that [the prisoner] lunged at [the guard] and that [the guard] used excessive force against him"). *Heck* does not bar Heard's § 1983 claims.

## B.    Failure to Allege Unconstitutionally Excessive Force

To succeed on an excessive force claim under the Eighth Amendment, a plaintiff must make both an objective showing and a subjective showing. *See Sconiers*, 946 F.3d at 1265—66.  The objective showing is met when the

official's actions were "harmful enough...or sufficiently serious ...to violate the Constitution." *Id.* (citations omitted). Force violates the Eighth Amendment if it "offends contemporary standards of decency, regardless of whether significant injury is evident." *Id.*

To establish the subjective element, a plaintiff must allege facts showing that the official acted with a sufficiently culpable state of mind. "[T]o have a valid claim...the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm," as opposed to "a good faith effort to maintain or restore discipline." *Sconiers*, 946 F.3d at 1265 (citation omitted). Factors relevant to this inquiry include: (1) the extent of the prisoner's injury; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat that was reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

But "[t]he infliction of pain in the course of a prison security measure...does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (citation omitted). And prison officials' actions should be viewed in light of the broad

11

deference afforded them in preserving order and security.  *Hudson*, 503 U.S. at 6.

Pierre-Louis argues, "Giving proper weight to the findings of Plaintiff's disciplinary proceedings [that he] disobeyed an order on May 26, 2023," Plaintiff "has failed to articulate how or why Pierre-Louis's alleged response … [was] done for any reason but to restore order…." (Doc. 20 at 9).  Pierre-Louis also highlights a lack of alleged malicious intent and any significant and lasting injuries.  (*Id.* (citation omitted)).

Pierre-Louis does not explain why the Court should accept the DR findings as true outside the *Heck* analysis.  As explained above, the Court must accept Heard's allegations as true when evaluating the sufficiency of his complaint.  According to Heard, he was not being disorderly during the incident.  He claims Doe got mad at him because he did not want to refuse Group Call-out.  Having already put Heard in full body restraints, Doe slammed him to the ground face-first.  Then Doe and Pierre-Louis got on top of Heard and kneed, kicked, and hit him.  Defendants' joint assault caused bruises and swelling on Heard's neck, legs, hands, and wrists lasting between three and seven days.  Heard's allegations plausibly support that Doe started the altercation for no penologically valid reason and that both Defendants applied significant, gratuitous force to Heard as he lay on the ground in full body restraints, causing observable physical injuries.

Admittedly, the Complaint does not show Heard's injuries were very serious. However, that does not itself defeat Plaintiff's claims. *See Wilkins v. Gaddy*, 559 U.S. 34, 37–40 (2010). The Complaint's allegations, assumed true and construed in the light favorable to Heard, raise reasonable inferences meeting the objective and subjective components of an Eighth Amendment claim against each Defendant. *See, e.g.*, *Williams v. Radford*, 64 F.4th 1185, 1197–98 (11th Cir. 2023) (allegations that guard repeatedly struck a handcuffed, restrained, and unarmed prisoner several times because he raised his voice was sufficient to state a claim); *Sconiers*, 946 F.3d at 1267–68 (prisoner's testimony that guard slammed him to the ground and pepper sprayed him for failing to comply with guard's orders to repeatedly stand and sit were sufficient to support an excessive force claim).

### C.   **Physical Injury under the PLRA**

Pierre-Louis argues Heard's allegations do not show an injury compensable under the Prison Litigation Reform Act (PLRA). (Doc. 20 at 10). He relies upon 42 U.S.C. § 1997e(e), which provides in relevant part: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" Pierre-Louis contends Plaintiff cannot recover compensatory and punitive damages because his

13

allegations show only trivial harms and not "physical injury" within the meaning of § 1997e(e).  (Doc. 20 at 10).

"[T]o satisfy § 1997e(e) the physical injury must be more than de minimis, but need not be significant."  *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *opinion reinstated in relevant part*, 216 F.3d 970, 972 (11th Cir. 2000) en banc)); *see also Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015).  Heard alleges physical injuries marked by swelling and bruising lasting between three and seven days and for which he received no medical treatment beyond an over-the-counter pain reliever.  The Court agrees with Pierre-Louis that such injuries are *de minimis* for purposes of § 1997e(e).  *See Pierre v. Padgett*, 808 F. App'x 838, 843–44 (11th Cir. 2020).  Accordingly, Heard's claims against both Defendants will be dismissed to the extent they seek compensatory damages for mental or emotional injury.  However, even without a qualifying physical injury, Plaintiff's claims are not subject to dismissal under § 1997e(e) insofar as they might support an award of nominal damages, *Brooks*, 800 F.3d at 1307–08, or punitive damages.  *Hoever v. Marks*, 993 F.3d 1353, 1355–56 (11th Cir. 2021) (en banc).

### D.   Eleventh Amendment Immunity

Pierre-Louis argues Heard's official capacity claims should be dismissed based on Eleventh Amendment sovereign immunity.   The Eleventh

Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Absent an abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662 (1974).

"When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* at 663. "Thus, the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* In other words, the bar protects state officials sued in their official capacities but not their individual capacities. *Melton v. Abston*, 841 F.3d 1207, 1234-35 (11th Cir. 2016).

Congress has not abrogated Florida's immunity, and Florida has not waived its Eleventh Amendment immunity. *See Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). Plaintiff cannot sue Defendants for money damages in their official capacities.

15

In addition to money damages, Heard demands declaratory relief. A limited exception to Eleventh Amendment sovereign immunity exists where a plaintiff alleges that state officials are engaged in an ongoing violation of federal law and seeks prospective equitable relief, including declaratory relief. *See Summit Med. Assoc, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (addressing the exception set out in *Ex parte Young*, 209 U.S. 123 (1908)).

This exception does not apply to Heard's claims. "[A] plaintiff may not use the [*Ex parte Young*] doctrine to adjudicate the legality of past conduct." *Summit Med. Assoc.*, 180 F.3d at 1337. When analyzing whether the *Ex parte Young* exception is applicable, a court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Because Heard's complaint only involves past events, the *Ex parte Young* exception to Eleventh Amendment sovereign immunity does not apply to his official capacity claims for declaratory relief.

The Defendants are entitled to Eleventh Amendment sovereign immunity on Heard's official capacity claims. Even though amendment of these claims would be futile, their dismissal is without prejudice because "[s]overeign immunity is jurisdictional in nature" and "[d]ismissals for a lack of jurisdiction are not judgments on the merits and are to be entered without

16

prejudice." *Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir. 2024) (citations omitted).

### E.   Qualified Immunity

"Qualified immunity protects government officials from individual liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Snorton v. Owens*, 808 F. App'x 814, 820 (11th Cir. 2020).  An official invoking qualified immunity must first show he was acting within the scope of his discretionary authority. *Id.*  The burden then shifts to the plaintiff to show: (1) the official violated a federal statutory or constitutional right; and (2) the unlawfulness of the official's conduct was clearly established at the time of the alleged violation. *Id.* at 820-21.   Defendants were plainly acting within the scope of their discretionary authority when they used force on Heard.

"A federal right is 'clearly established' when 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful.'" *Anderson v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (quoting *D.C. v. Wesby*, 583 U.S. 48, 63 (2018)). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Wesby*, 583 U.S. at 63 (internal quotation marks omitted).  To show that a legal principle is clearly established, a plaintiff

17

must produce precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

As explained above, Heard adequately alleges that Pierre-Louis and Doe violated his Eighth Amendment right to be free from excessive force. So the question is whether the unlawfulness of Defendants' actions were clearly established at the time. It was. When the incident occurred, it was clearly established that "the unjustified use of excessive force by a prison guard against an inmate" who is restrained and "pose[s] no continuing threat" violates the Eighth Amendment. *Davis v. Locke*, 936 F.2d 1208, 1213 (11th Cir. 1991); *see also Hadley v. Gutierrez*, 526 F.3d 1324, 1333 (11th Cir. 2008) (the use of gratuitous force against a "handcuffed, non-resisting" prisoner violates the Eighth Amendment). Heard alleges that both Defendants kneed, kicked, and hit him even though he was lying on the ground in full body restraints, was "not being disorderly," and therefore posed no threat of harm. Accepting these allegations as true, neither defendant is entitled to qualified immunity.

## F.    Mootness

Since the incident, Plaintiff has been transferred to a different prison. (*See* Doc. 21). The general rule in the Eleventh Circuit "is that a transfer or release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Lewis v. Sheriff, Fulton Cnty. Georgia*, 166 F.4th 107,

18

115–16 (11th Cir. 2026) (citation omitted). Because mootness implicates subject-matter jurisdiction, federal courts have an obligation to consider the issue *sua sponte*. *See United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1223, 1226 (11th Cir. 2015). Any claims for declaratory or injunctive relief against Defendants in either capacity are moot. *See Wahl v. McIver*, 773 F.2d 1169, 1173–74 (11th Cir. 1985).

Accordingly, it is now

**ORDERED:**

(1) Defendant Mackender Pierre-Louis's Rule 12(b)(6) motion to dismiss (Doc. 20) is **GRANTED IN PART AND DENIED IN PART**.

(2) All claims against Pierre-Louis and John Doe in their official capacities are **DISMISSED WITHOUT PREJUDICE**.

(3) The claims against Pierre-Louis and John Doe in their individual capacities are **DISMISSED WITH PREJUDICE** to the extent they seek compensatory damages for mental or emotional injury.

(4) Plaintiff's claims declaratory or injunctive relief are **DISMISSED WITHOUT PREJUDICE** as **MOOT**.

(5) Pierre-Louis's motion is otherwise **DENIED**, and he shall file an answer to the complaint within 14 days of this Opinion and Order.

20

**DONE** and **ORDERED** in Fort Myers, Florida on July 1, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-3
Copies:  All Parties of Record

20